The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez, all persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. All right. Good morning, everyone. We're ready to begin. Let's have the attorney for the appellant, please. May it please the Court, I'm Nick Vlahos, Special Deputy Attorney General, North Carolina Department of Justice, representing respondent. What did you say your name was? I don't have it right in front of me. Nick Vlahos, Your Honor, spelled V as in Victor, L-A-H-O-S as in Sam. Good. Thank you. We're glad to have you here. Thank you, Your Honor. Unless Hyman can demonstrate that the State Court's factual determinations are incorrect by clear and convincing evidence and objectively unreasonable in light of the record before the State Court, his exculpatory witness, ineffective assistance of counsel claim, fails on federal habeas review. Which State Court are you talking about? I'm talking about the North Carolina Supreme Court. There's more than one North Carolina court involved. The Court of Appeals went one way and the Supreme Court went the other way. Correct, Your Honor. You're saying the Supreme Court of North Carolina made factual findings. No, Your Honor. The factual finding was made in the Superior Court. Judge Grant made the factual finding in the Superior Court. So you're talking about the Third Court, the Superior Court. Okay. The trial court. The trial court. Yes, Your Honor. Judge Grant's factual determination. It's the North Carolina trial court's factual findings that we look at. Your Honor, those were upheld on appeal by the North Carolina Supreme Court, so it's the Supreme Court's decision upholding those that the court's looking at. Right. They upheld them, but the actual findings were made by the trial court. They were, Your Honor. Yes, sir, they were. And Judge Boyle, the district judge, said those were unreasonable? Yes, Your Honor. He ruled that they were objectively unreasonable. So he dealt with the factual findings as far as you're concerned under proper court? As far as I understand, Your Honor. Yes, sir. No question about that. Now here, the state court factual determination in question is Judge Grant's finding that Hyman failed to establish at the MAR evidentiary hearing that the alleged exculpatory conversation between defense attorney Teresa Smallwood and state's witness Derek Speller actually occurred. Did she testify at the state court proceedings you're talking about? She did not testify at the MAR evidentiary hearing, Your Honor. However, she did testify at an earlier remand hearing. So the state court that you're talking about that we need to defer to didn't hear from her? Not at the MAR evidentiary hearing when it mattered, Your Honor. Now, the state court factual determination is important because Hyman's claim is important to Hyman's claim because if the conversation between Smallwood and Speller never occurred… We don't know what Smallwood said. She didn't testify. Correct, Your Honor. She didn't. Did he testify? Speller? Speller did not testify either, Your Honor. But we don't know what either of them said. Well, Speller testified… But you're saying we need to defer to the factual findings made by a trial court that didn't hear from either witness. Speller testified at trial, Your Honor, and his testimony was introduced into evidence at the MAR evidentiary hearing. That wasn't that hearing that you're talking about, though. It is. The motion for appropriate relief evidentiary hearing. His testimony was offered into evidence there. His testimony was offered into evidence, but it wasn't heard at that time. It was not. Neither of the witnesses or neither of the folks that we're talking about testified. That's correct, Your Honor. Neither Speller nor Smallwood testified at the MAR… That's all the point I'm trying to make. That's correct, Your Honor. So when did Ms. Smallwood testify? Ms. Smallwood testified at a remand hearing that occurred in 2005. It was on the issue of the dual representation and effective assistance of counsel claim when it came back from remand from the North Carolina Court of Appeals to the Superior Court to have a hearing. So was that on direct appeal of his initial conviction, or was that on appeal from the initial MAR hearing? That was on direct appeal from his initial conviction, Your Honor. Okay. And the reason this issue is… And when was this state court hearing that we're talking about? In 2014. 2014. MAR evidentiary hearing, Your Honor. MAR is what we call this court. It's an MAR court in this kind of proceeding under North Carolina law. Yes, Your Honor. Right, MAR. Correct, Your Honor. So it was a MAR hearing in 2014. Yes, sir. So how did Smallwood's testimony from the remand on direct appeal, did that get into the MAR court's record? It did, Your Honor. It was offered into evidence in the MAR. Okay. And was it the same judge at the initial trial as at the MAR trial? Yes, it was, Your Honor. It was the same judge at the trial, same judge at the remand hearing, and same judge at the MAR evidentiary hearing. Okay. And… That's a 2005 testimony. The 2005 testimony, Your Honor. She testified in… Smallwood, Ms. Smallwood is a court-appointed lawyer. Correct, Your Honor. And she testified in… The trial was in 2003, I think. Yes, Your Honor. And she testified in 2005. Yes, Your Honor. In an earlier MAR proceeding? No, Your Honor. That was a remand hearing. It was a remand hearing. But it was… She testified in 2005. But it wasn't about the matters that were on the 2014 concern. That's correct, Your Honor. It was a different issue. I think the point you're making is that whenever Smallwood testified, there's no impediment to the MAR court making the factual findings that it did. The MAR court had plenty to go on if it's the same judge and had listened to the trial testimony and had been present at the remand hearing. The judge had plenty to go on to make factual findings at the MAR stage. That's absolutely correct, Your Honor. Not only did Judge Graham… But you're saying they could make factual findings without hearing the testimony? Well, from either of the witnesses. They had the sworn testimony in front of them from the other hearings. But they didn't hear it. They did not hear live testimony. No, Your Honor. A couple things about that. Well, they'd already heard the testimony, correct? At the remand hearing, the same judge heard the testimony and it was admitted into the record on the MAR hearing. That's correct, Your Honor.  It was on a different issue, Your Honor. It was on a different issue and she wasn't questioned about any of this. Well, she was asked questions about whether Speller gave her a statement or not. She was asked some questions. It didn't have anything to do with these notes. It did, Your Honor. What happened was there's two things that Smallwood and Speller agree upon, although they're at odds. There's two things that they agree upon. One, they had only one conversation about Hyman's case. And two, that the conversation occurred after Smallwood represented Speller on his probation violation. It had to do with the dual representation of Smallwood and her partner of Speller in an unrelated matter. It did, a probation violation, Your Honor. That's what it was about.  Well, before we get to the hearing, Derrick Speller testified that's the only conversation that you and I ever had about this case. A conversation out in the parking lot, not in Smallwood's office. You're talking about the testimony of 2005 or at the trial? At the trial. At the trial is when she cross-examined me. Correct, Your Honor. Okay, that's what you're talking about here now. No, Your Honor.  I'm talking about 2003 trial, Derrick Speller testified. 2003 trial. Now, that's the only conversation that you and I ever had about this case, the one out in the parking lot. Also, Speller testified. Who did, counsel, who did testify at the actual MAR hearing? Your Honor, the people that testified at the MAR hearing were Tonza Ruffin, who's a law partner of Smallwood. She testified that she saw Speller in the parking lot speaking to Ms. Smallwood. She also testified that she remembers no notes being taken in the parking lot during Smallwood's conversation with Speller. And she identified the attorney timesheet where Smallwood did not make an entry for the date, November 20th of 2001, that was on these notes that the defendant offered into evidence, or excuse me, that Hyman offered into evidence at the MAR evidentiary hearing. Did Mr. Hyman testify, who was Hyman's second chair at the trial? Yes, Your Honor, he was Hyman's second chair at the trial. And Mr. Hyman testified at the MAR hearing? He did, Your Honor. He testified that he and Smallwood sat down prior to trial with a witness list. Speller's name was on the witness list, and they decided that Mr. High would cross-examine him at the capital murder trial. Mr. High had no idea, and Ms. Smallwood never mentioned to him that Speller had given her a prior statement. So, in other words, Mr. High said that Smallwood had never mentioned any such conversation to him, and that she seemed caught off guard when Mr. Speller took the stand. Correct, Your Honor. Even though they had gone over a witness list together and specifically decided that Mr. High would cross-examine him. And she claimed she was caught a little off guard. Also, Mr. High did not hear the contents of what Ms. Smallwood claimed that the conversation was until she was actually cross-examining Speller. It happened during a 14-minute recess. She said, I'll be right back, left and got some notes, and came back and then cross-examined him there. So, there were detailed and precise time records that were submitted in this case for reimbursement, but as I understand it, there was no entry for the date written on Exhibit No. 1. That's correct, Your Honor. There was no entry for that date on Ms. Smallwood's record. And the fact that there was no entry for that date came in in the MAR hearing, did it not? It did, Your Honor. What I'm saying is, I mean, what I'm suggesting is that given the folks who did testify, given the documentary evidence, given the prior acquaintance of the judge with the persona in the trial, that there was ample material before the MAR court to make a factual finding. Yes, Your Honor, there was ample evidence before the MAR court to make a factual finding, and that factual finding was that Mr. Hyman failed to establish at the hearing... I thought the factual finding was that the conversation did not occur, and of course, if the conversation did not occur, there could be no conceivable conflict. That's correct, Your Honor. So even apart from that, it's hard to see how there was prejudice here for the simple reason that, let's suppose Smallwood, what would she do if she withdrew from representation and was to testify as a material witness? It would then come before the jury that she represented him on a probation matter, and what's the jury going to do with that? It's not going to be very helpful to Ms. Smallwood's representation or to Mr. Hyman's case if it comes out on cross-examination or whatever that she previously represented him on a probation matter. Your Honor, that came out during Smallwood's cross-examination of Mr. Speller. That was before the jury, according to Speller. It was by his testimony, Your Honor. But if they both testified, their stories would have been directly contradictory. Not on everything, Your Honor. They both said they only had one conversation. On the question of this conversation at the parking lot and what she was told by Smallwood was told by Speller in the parking lot. They would have been contradictory. And that's what juries are for, to decide by stories that are contradictory. And her testimony about this event, so-called event, in the parking lot, you'd say so-called event, has never been taken. It was never taken. And what you're saying is that there's an issue of a conflict, but it seems to me that either way it goes, there's a Strickland violation, most likely. Either way it goes. There's no Strickland violation. Either way it goes. There's no Strickland violation either, Your Honor. If there's a Strickland violation, that's what their argument is, a Strickland violation here, that she didn't get out. Or a Siler violation combined with Strickland, that she didn't step aside. And you're saying, well, maybe she falsified. The court said she may have falsified these notes. If she did, that's a Strickland violation. Her duty is to him. And you're saying she's committed violations of structure of justice or something. The lawyer for the defendant, that's got to be a Strickland violation per se. Your Honor, the important thing is- So any way you turn it, I think you're in a box, my friend, for the state. Your Honor, the important thing in this case is the evidence before the state court. Now in this case- You're talking about the evidence before the MAR court in 2014. Correct, Your Honor. And neither of these folks testified before the court in 2014. Correct, Your Honor. Neither of them. However, there was important evidence before the MAR court- Where they should be testifying in a murder trial, if they've got different versions of the story, is before the jury, which can hear both of them and decide what, if anything, the truth is and if it makes any difference. That's what juries are for. Not for appellate courts or MAR courts 15 years later. Your Honor, I see my time is up. Would you like me to answer? Yes, Judge. Please, go ahead. Your Honor, the focus here is on the deference that's owed to the state courts, not on what could have been- I understand the deference. Yes, sir. And Judge Boyle rejected that. That's the appeal you're bringing. You're saying what Judge Boyle did is wrong. Correct, Your Honor. On De Novo Review, there's no deference to Judge Boyle, but both Judge Boyle and this court owe a great deal of deference to the state courts. And you're saying Judge Boyle didn't accord the proper deference? Correct, Your Honor. I'll try. Thank you. I'll reserve the rest of my time. All right. Thank you. Let's hear from the appellee here. May it please the court, my name is Kristen Todd. I'm an attorney with North Carolina Prisoner Legal Services, and I represent the petitioner, FLE, Mr. Terrence Hyman. The state, as you stated, Judge King, is seeking reversal of Judge Boyle's order, which granted Mr. Hyman habeas relief and vacated his murder conviction. In that order, Judge Boyle correctly held that the state court's decision was based on an unreasonable determination of the facts in light of the evidence presented. Why was it unreasonable? Your Honor, well, first of all, we were required to show that it was unreasonable by clear and convincing evidence, and I would tell you that Mr. Hyman has clearly met that burden. You asked a lot of questions about who all testified at the MAR hearing, when we heard from Smollett and Steller. Well, what's important is what was the evidence in the record, because it was your burden at the MAR hearing. It was. And so the record from the earlier proceedings was admitted. Yes, Your Honor. The record from the original trial. And you've raised no claim as to error as to that. No, Your Honor. We're saying that that finding of that. So all that's fair game, both for that court and our court. Yes, Your Honor. Well, first I'd like to clarify that the actual finding that the trial court made was that there was no credible evidence that this conversation ever occurred. I know it's a matter of word choice here, but not that the conversation didn't happen, but that we didn't present any credible evidence. Well, it's your burden, isn't it? It absolutely is. Yes, Your Honor. For the MAR court, if you want to upend the conviction, it's your burden to do that, to put on that evidence. So if someone didn't testify, that's on you, isn't it? It was our burden to prove by a preponderance of the evidence that this conversation happened, not beyond all reasonable doubt, not without it. Why wouldn't you bring the witnesses, and every witness that was very helpful to you, why didn't you bring them forward? Well, Your Honor, we had the testimony, and as the appellant noted, the testimony from the original trial was admitted into evidence at the MAR hearing. How does any of that evidence help you? Because the MAR court who heard all of this through all the years did not find Ms. Smallwood had any credibility. So at the MAR hearing, the evidence was introduced, for instance, that she had been disbarred for, among other things, lying to the North Carolina State Bar. She testified that she represented Mr. Hyman only after her representation of Mr. Speller had concluded, and that cannot possibly be true. She was appointed to represent him in May of 2001. She supposedly met with Speller in November of 2001. She represented Speller at the probation hearing in 2002, and a year later in his trial. There's no possible way her testimony could be true. There are definitely some questions, Your Honor, about the timing of everything, whether the conversation happened... Well, the point is there are serious questions, legitimate questions, that a trial judge could consider as to the credibility of Ms. Smallwood. And the trial judge found she didn't have any credibility. I would say two things to that, Your Honor. First is if you look at the cross-examination of Derrick Speller at the original trial, he did say, yes, I had a conversation with you about this case. Now, obviously, he denied the substance of that conversation. Yeah, but Ms. Smallwood said, that happened in my office. I agree. The other witnesses contradict her. Sure. Again, that goes to her credibility. Sure. So why isn't the MAR judge entitled to find that if she has no credibility, this conversation didn't occur? I'll tell you who did have credibility is Tonza Ruffin. Tonza Ruffin was not her law partner, was not in any way involved in this case. She had no ties to Mr. Hyman. By the time of the MAR in 2013 and the hearing in 2014, Tonza Ruffin was no longer associated with Ms. Smallwood in any way, and she got up on the stand under oath and said, I saw Speller in the parking lot. He indicated in that conversation that he had helped her with her marriage. I don't think anybody disagrees that they had a conversation in the parking lot, but I don't believe Ms. Ruffin gave any testimony that fortifies this written sheet Ms. Speller supposedly came up with. She did say that later Smallwood came to her and said, Speller told me he was there that night, he saw everything that happened, and he wants to help us. That was Tonza Ruffin's testimony. She then identified that handwriting in those notes as belonging to Teresa Smallwood and said yes. Yeah, but what does that prove? That doesn't prove when it was written or anything else. Absolutely, Your Honor. And obviously what the appellate wants you to believe is that it's more reasonable to say Smallwood perjured herself at the 2005 remand hearing under oath. Because under oath at the 2005 remand hearing, Smallwood said, even though the specific issue was the multiple representation, she still said under oath, I had a conversation with Speller about Mr. Hyman's case and I made contemporaneous notes that I then put in my trial. Right, but on appeal in this setting, though, in a habeas setting, it's not a question of, well, was there a preponderance one way or the other. You have to prove, you have to prove by clear and convincing evidence that the MAR court was wrong. I believe we've done that, Your Honor. I believe between Speller's admission that he spoke to Smallwood, Smallwood's testimony at the remand hearing that this happened, that she testified under oath, Tonza Ruffin's testimony under oath, I think for you to say that that finding of fact is not objectively unreasonable, you have to make the assumption that Smallwood completely fabricated this entire conversation, sat down during that recess, and forged those handwritten notes. Counsel, there's a whole lot of reasons to believe that the conversation didn't take place, and you're gliding over that. As Judge Agee pointed out, Smallwood was a very shaky witness, and the time records that included requests for reimbursement somehow made no entry for the date written on the exhibit. And Smallwood says she was caught off guard when Speller testified that he had spoken with her speaking to him, and Mr. High, who was the second chair at trial, said Smallwood never mentioned any such conversation before Speller testified. Now, you know, those are things that the MAR court was affirmed by the North Carolina court could have used. You may not agree with them, but the burden here is a high one, and there certainly are a number of factors that neither Smallwood nor anyone else, as far as I can tell, this is the North Carolina Supreme Court, said neither Smallwood or anyone else testified at the MAR hearing that the conversation supposedly memorialized in this exhibit actually occurred. And if neither Smallwood or anyone else testified at the MAR hearing, it's your burden, it seems to me, to put on that testimony that somebody would testify that the conversation had actually occurred. The North Carolina Supreme Court said there was no, neither Smallwood nor any other person testified at the MAR hearing that this supposedly, that this conversation supposedly memorialized in this exhibition even occurred, and that's your burden to show that it occurred and to put on testimony that would obviously go to the point you're trying to make now. I would argue, Your Honor, that we did. I mean, we admitted Smallwood's testimony from the 2005 remand hearing where she said that this conversation happened and I made notes memorializing it. Well, I'm talking about before the MAR court. Right. Just not putting in a documentary evidence. There was no barrier to your bringing Smallwood forward or Speller forward or anyone else. There wasn't. I would say two things to that, Your Honor. First of all, as the appellate pointed out, Judge Grant was the judge at every single one of these hearings. He heard the prior testimony of Speller. He heard the prior testimony of Smallwood. And, yes, he was the judge of their credibility. Which included Smallwood's testimony that she did not represent Mr. Hyman until she represented Mr. Speller, which was blatantly false. There's some confusion about the timing. I don't think there's any confusion about it. Where in the record is that contradicted? So, there is a mention in the record that her firm actually represented Speller on a number of different occasions. She appeared in person on September 26, 2002 to represent Speller in his probation revocation hearing a year before Hyman's trial. There's certainly confusion about the timing, about whether it took place in a parking lot or in the office, or maybe there was more than one conversation and there's confusion, you know, they're conflating the locations and the times. And you had the opportunity to clear all that up, if you could, at the MAR hearing. But you didn't. We didn't. And I would just say, I mean, this court recently held in Dunby-Reeves, which I think the state cited in their brief, that not calling the trial attorney  No, but you bear the burden. You're trying to upset a factual finding, and you didn't put on the most relevant testimony to that factual finding. And that is, I don't think we've been confronted that kind of situation before. The other thing is that there's all too much emphasis put on Smallwood at the expense of the overall case. I don't see how Smallwood, given the fact that she had earlier represented Mr. Hyman or how that was going to help Mr. Hyman. I don't see, she probably, if she'd gotten on, given the fact that she was a very shaky witness, as Judge Agee had pointed out, that she was open to devastating impeachment, that she's gotten all kinds of difficulties, and that she is compromised by her earlier representation. That was going to be harmful. And that was one of the reasons why we can't overturn the ultimate finding here, regardless of this subordinate matter. The ultimate finding here was that this whole matter didn't result in Strickland prejudice because there was no reasonable probability that the outcome of this trial would have been different. And the reason for that is the case was a lemon. You have two witnesses who say they saw Hyman shoot Mr. Bennett, and Hyman's one witness was thoroughly impeached and biased, and Smallwood wasn't even at the LNQ social club. She wasn't even on the scene. And you have people who were on the scene, and they were eyewitnesses, and they testified to what they saw. And the case was a lemon, and that fact is not going to be changed by anything regarding Mr. Smallwood, and that is another finding of reasonable probability which the North Carolina courts have made. I have two responses to that, Your Honor. First is that we obviously have argued and continue to argue that Strickland is not the clearly established federal law in this case. I don't understand that. You say it's solid? Yes, Your Honor. You say it's solid? Yes. It only applies where there's simultaneous representation of two defendants. There is not a single Supreme Court case, Your Honor, that has said that that holding is limited strictly to the multiple representation context, and this court has applied it. They haven't expanded it beyond that. Well, we would argue this court has applied it in this situation and that this is what applies, which means that Mr. Hyman does not have to prove prejudice. But I would also say there is quite a bit of prejudice in this case, even if this court decides that Strickland is the clearly established federal law. But if he can't, if he can't, don't you take the position that he's entitled to per se rules. Don't you take the position that he's entitled to relief, regardless of this issue about these notes and everything? I mean, if she, Smallwood, did create these notes surreptitiously, isn't that a Strickland violation? I certainly agree with you, Your Honor, that that is not following her duty of loyalty to Mr. Hyman. Right, but where have you ever raised that claim? It seems to me that there's a Strickland violation whichever way you turn it. Any direction you turn it, there's a Strickland violation. I certainly, you're right, Judge. I did not argue that in my brief. But I also agree that if that is what happened. Siler is arguing about the prejudice problem. I would say the prejudice is presumed. Yes. But even if you have a Strickland issue, then you've got to deal with the prejudice. But you have to have a factual. There's a violation regardless of these notes. This is a red herring. And I don't know how everybody got focused on this to this extent. I mean, it's interesting. But in the final analysis, it's a swearing match of a swearing match from two people and didn't testify. And ultimately, that's what juries are for. That's basic trial practice. I would like to quickly address Judge Wilkinson's point, though, that this case was somewhat of a lemon. I have to strongly disagree with that. There were two state's witnesses who testified that it was Mr. Hyman. One of those was Robert Wilson, who Judge Grant himself commented at the MAR hearing. Everybody knows Robert Wilson. Everyone in this courtroom knows Robert Wilson. He's a career criminal. He's testified for the state before. Judge Grant himself said this was not really a two-on-two case. This was a two-against-one case. That leaves just Derek Speller. So you have Derek Speller versus the two witnesses for the defense who said this was not Terrence Hyman. Well, what Smallwood, the point is the competence prong of Strickland was not brought into this. In terms of the MAR findings, they talked about prejudice. And you're trying to replay the trial and everything, but the question is, was there prejudice? And that's the prejudice prong, not the performance prong. But even on the prejudice prong, we're obliged to defer to the state court findings. And you're trying to convince us by clear and convincing evidence that those state court findings were wrong when you didn't even put on the evidence. What I'm trying to say, Your Honor, is that had Smallwood, who was the sole person who had this information, she was the only witness to this conversation, had she gotten on the stand and said, Speller told me that Demetrius Jordan was the shooter, which is actually what one of the defense witnesses testified to. Demetrius Pugh said Demetrius Jordan was the shooter. Had Smallwood gotten up there and said that about the one key witness that the state had, clearly that would have made a difference. Not only that, Speller repeatedly and vehemently denied the substance of this conversation on the stand. She wasn't allowed to respond to that or get her notes into evidence. So she has, at the same time, impeached her own credibility. He's impeached her credibility in front of the jury. So had she been able to get up there, testify about this conversation, admit her notes into evidence, she could have, at the same time, impeached Speller and rehabilitated herself as Mr. Hyman's trial lawyer, which certainly would have had an impact. I doubt that she would be able to rehabilitate anybody, given the fact that she herself was open to impeachment on a variety of grounds. In other words, the North Carolina courts could say, look, even if she got into it, it would have been harmful to Mr. Hyman's case, and the lawyers would have been criticized and everything for putting anybody like that on. That would have been called ineffective assistance of counsel. I certainly think she could have been impeached on the fact that she had prior representation of Speller, but as the appellate pointed out, that was already in front of the jury at that point. They already knew she had represented him before. Well, there's nothing like being in front of the jury when the witness actually gets on the stand. Sure, and what I would say, Your Honor, in my last minute of time is that, as one of the other judges said earlier, the jury should have been the ones to decide whether this was credible or not. The jury did decide this because the basic question before the jury didn't really have a lot to do with Smallwood. What it had to do with was a credibility contest, basically, between those who were eyewitnesses to what took place at this club. That was the heart and soul of the case. And you say, oh, well, this would have helped us impeach, and they wouldn't have believed those eyewitnesses. I don't see that. I think the most relevant, direct testimony was the people who were at that club that night and whom the jury believed, and the credibility would not have been changed by Ms. Smallwood. The credibility would have been judged by the jury's appraisal of their demeanor on the stand. And if Ms. Smallwood had acted properly and gotten out of the case and got on the witness stand, she would have directly contradicted Speller. Yes, Your Honor, and I would also say quickly, I know I'm out of time, but she had a duty to recognize this conflict ahead of time, address it ahead of time. The fact that she waited until Derek Speller was on the stand apparently forgot that this even happened. To address this conflict, the North Carolina courts made the point that the conversation never took place. That's a factual finding. And if it didn't take place and it never occurred, there's no conflict. It's a factual finding without supporting evidence. I agree with you, Your Honor, that this case comes down to whether this conversation occurred. I absolutely agree that is a dispositive question. And you're trying to say by clear and convincing evidence that it did occur, and yet you didn't bring on the testimony that would have been most helpful to your case at the MAR court. You could have put it on. You didn't put it on. And now you're trying to say by clear and convincing evidence that the North Carolina court's factual finding that it didn't occur, which is supported by considerable bits of evidence, is wrong by clear and convincing evidence. And, you know, at some point, we've got to place some trust in the jury system and the way it interacts with state courts. We have time after time and case after case trying to get around the AEDPA standards. And it is getting to the point where I think we are simply failing to pay the respect to state courts that they deserve. It all seems to be that the action has to be here in the federal system, that the state courts play a crucial part in our criminal justice system. And the Supreme Court has said in case after case, we are supposed to pay it. It's due respect. That's what happens time after time where the action is brought in the federal court and state courts are simply left in the lurch. It's not what the Supreme Court wanted us to do. And when you read Harrington v. Richter, that case could not have been stronger in communicating this message. See that I'm out of time, Your Honor. We would just ask we continue to argue that the findings of fact that were made in the state courts were objectively unreasonable and that the district court was correct in granting Mr. Hyman habeas relief. And we ask that you uphold that decision. Do you have any final concluding statement you wish to make? No, Your Honor. I think I've addressed everything. I do not believe that we are trying to somehow get around the standards. I do believe that this finding that there was no credible evidence that this conversation ever occurred is an objectively unreasonable finding, considering all of the evidence that we presented that came from the original trial, that came from the remand hearing, that came from the hearing. We didn't have to show that this was absolutely 100% this conversation happened. We had to show by a preponderance of the evidence that this conversation happened. And I strongly believe that. No, you had to show by clear and convincing evidence. In the MAR court, we had to show by preponderance. Now we have to show by clear and convincing that those findings of fact are incorrect. At the MAR hearing, our burden was a preponderance of that. You think Judge Ball got it right? Absolutely, Your Honor. Thank you. All right, thank you. All right, you have some rebuttal time, sir. Thank you, Your Honor. Your Honor, the state sent a letter of additional authority to the clerk citing the Burr v. Jackson decision, fairly recent decision of this court, November 30th of 2021, a published decision. The reason the state sent that letter, or sent the letter about that case, is it stands for the following proposition. What did you call it, Jackson? Burr v. Jackson, Your Honor. To the extent multiple interpretations of the facts may exist, the state court's determination of the facts is not objectively unreasonable. And that's this court quoting Duke v. Allen, an 11th Circuit decision from 2011, which fits nicely with the next quote, where this court quotes Brumfield v. Kane, a United States Supreme Court decision. If reasonable minds reviewing the record might disagree about the finding in question, on habeas review, that does not suffice to supersede the trial court's determination. In this case, meaning the state trial court factual determination. Reasonable minds can disagree in this case about this factual determination. And because they can, Hyman has failed to meet its burden by showing, by clear and convincing evidence, that it's incorrect and failed to show it's objectively unreasonable. Thank you. All right, we thank you. I'd like to thank both of you for your arguments. We appreciate it very much. And I think that concludes our session this morning. And I'll ask the courtroom deputy, if she will be so kind as to adjourn court. This honorable court stands adjourned. God save the United States and this honorable court.
judges: J. Harvie Wilkinson III, Robert B. King, G. Steven Agee